**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**
ex. rel. **GREGORY CHABOT,**

-vs-                                                        Case No. 6:06-cv-1528-Orl-19UAM

**MLU SERVICES, INC.,**

        **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion of MLU Services, Inc. to Dismiss the Complaint or, in the Alternative, Motion to Strike and Memorandum of Law in Support (Doc. No. 13, filed Dec. 21, 2007); and

2. Response of Relator Chabot and Memorandum of Law to Defendant MLU Services Inc.'s Motion to Dismiss (Doc. No. 16, filed Jan. 14, 2008).

## Background

Plaintiff United States, through *qui tam* Plaintiff Gregory Chabot, brought this action against Defendant MLU Services, Inc. ("MLU") under the False Claims Act. Chabot alleges that MLU made a series of false certifications to the Federal Emergency Management Agency ("FEMA"). (Doc. No. 1 at ¶ 6.) According to the Complaint, FEMA initiated a temporary housing program in 2004 to assist Florida residents displaced by four hurricanes, Charley, Frances, Ivan, and Jeanne. (*Id.* at ¶ 7.) FEMA implemented the program by contracting with mobile home installers in the private sector. (*Id.* at ¶ 9.) In its request for contract bids, FEMA required all bidders to comply with Federal, State and local regulations. (*Id.* at ¶ 10.)

Florida law requires installers of manufactured and mobile homes to comply with certain licensing regulations. Fla. Stat. § 320.8249 (2007). In particular, contractors are required to obtain a license from the Bureau of Mobile Homes ("the Bureau") before installing any manufactured or mobile home. *Id.* § 320.8249(1). The statute prescribes criminal penalties for contractors who falsely present themselves as licensed. *Id.* § 320.8249(8).

In paragraphs fourteen through twenty-six of the Complaint, Chabot describes what he terms an "investigation of fraud." Chabot alleges that he is a licensed mobile home installer and would typically be invited to "pre-bids" for the installation of temporary housing projects in Florida. (Doc. No. ¶ 14.) However, Chabot did not receive an invitation after hurricane Charley. (*Id.*) About one month after the hurricane, an unlicensed contractor approached Chabot and offered to buy a "certification decal," which may only be obtained by a licensed contractor. (*Id.* at ¶ 15.) The unlicensed contractor indicated that he needed the decals because he was getting a contract from FEMA to install temporary housing. (*Id.*)

Becoming suspicious, Chabot contacted Kevin Cashin, the owner of a mobile home supply company that had recently obtained a FEMA contract despite having no experience actually installing homes. (*Id.* at ¶ 17.) Cashin was initially reluctant to speak with Chabot, but he eventually forwarded an email to Chabot containing a bid request package. (*Id.* at ¶ 18.) Chabot noticed that the email was addressed to a number of unlicensed contractors, as well of as the Bureau. (*Id.*) Chabot then discovered that the recently-retired Chief of the Bureau had become business partners with Cashin. (*Id.* at ¶ 19.) Based on this discovery and some follow-up conversations, Chabot concluded that Bureau had somehow gained control over the FEMA project bidding process, doling out bid invitations based on patronage and without regard to the State's licensing

requirements. (*Id.* at ¶¶ 21-26.) In turn, the narrowing of the bid pool forced FEMA to award contracts at a rate almost three times the normal rate charged by licensed local contractors. (*Id.* at ¶ 25.)

Chabot alleges that MLU held itself out to be a licensed mobile home and manufactured home installer under section 320.8249 of the Florida Statutes. (*Id.* at ¶ 30.) According to the complaint, MLU submitted seven claims to FEMA for a total $7,500,000, all in violation of 31 U.S.C. § 3729(1)-(2) because MLU was not in compliance with state law. (*Id.*) Chabot did not attach MLU's contract with FEMA or its claims for payment.

MLU has filed a motion to dismiss, arguing that Chabot's Complaint must be dismissed with prejudice because (1) Chabot failed to attach MLU's contract with FEMA to the Complaint even though it could have been obtained through the Freedom of Information Act; and (2) MLU's contract with FEMA provided that MLU would only install "travel trailers" that are not subject to the same licensing requirements as "mobile homes" and "manufactured homes." (Doc. No. 13 at 3-6.) In the alternative, MLU asks that the Court strike paragraphs fourteen through twenty-six because they do not pertain to the actual claims against MLU. (*Id.* at 6.) Chabot filed a response in opposition to MLU's motion. (Doc. No. 16.)

**Analysis**

**I.    Failure to Attach Documents to the Complaint**

"[N]othing in the federal Rules of Civil Procedure requires Plaintiff to attach any document to the complaint." *Leblanc Nutritions, Inc. v. Advanced Nutra LLC*, No. Civ. S-05-0581FCDJFM, 2005 WL 1398538, at *2 (D. Cal. 2005) (citing *Leatherman v. Tarrant County Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). A plaintiff is only required to state a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The fact that Federal Rule of Civil Procedure 10(c) allows exhibits to be filed with the complaint does not create an affirmative duty to file such an exhibit. Thus, this case cannot be dismissed simply because Chabot failed to attach MLU's contract with FEMA to the Complaint.

## II.     Failure to State a Claim

MLU argues that Chabot's complaint must be dismissed because the actual contract between MLU and Chabot reveals that MLU only contracted to install "travel trailers" that are not subject to the same licensing requirements as "mobile homes" and "manufactured homes." (Doc. No. 13 at 4.) In support, MLU attaches a contract between itself and FEMA. (Doc. No. 13-2.)

Under Federal Rule of Civil Procedure 12(b)(6), the Court may only consider matters outside the scope of the pleadings if it treats the motion to dismiss "as one for summary judgment." Fed. R. Civ. P 12(d). However, the Eleventh Circuit has held that:

> [W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.

*Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). MLU argues that this interpretation of Rule 12 allows the Court to consider the attached contract.

Despite MLU's assertion, it is not obvious that the contract attached to MLU's motion to dismiss is "central" to Chabot's claim. The cause of action in Chabot's complaint is premised on "claims" that MLU submitted to FEMA. (Doc. No. 1 at 2, 10.) Although it is logical to assume that these "claims" arose from one or more contracts between MLU and FEMA, it does not follow that

the particular contract attached to MLU's complaint was the only contract executed between MLU and FEMA during the relevant time period.[1] In fact, the language of the contract militates against such a conclusion. The total value of services rendered under the contract is listed as $1,000,000. (Doc. No. 13-2 at 2.) Chabot alleges that MLU submitted seven false claims for a total of $7,500,000. (Doc. No. 1 at ¶ 30.)

Moreover, even if the Court were to consider the language of the contract, it provides no support for MLU's position. "Item 20" on the first page of the contract lists the "supplies/services" to be provided under the contract. (Doc. No. 13-2 at 2.) Like other "items" on the page, the heading of Item 20 instructs the reader to "See Continuation Page." (*Id.*) Directly under the heading, Item 20 specifies that MLU is to "Provide Set-up/Installation Services for travel trailers in response to disaster operations . . . ." (*Id.*) An additional description of "supplies/services" appears on page seventeen of the contract, which is titled "Continuation Page." (*Id.* at 18.) The first and only service listed on this page is "Set-up installation of Manufactured Homes and Travel Trailers."

Counsel for MLU has either made an incorrect and false representation to this Court or neglected to read the entire contract. In either case, MLU's argument fails. The contract states that MLU was obligated to set up and install "manufactured homes," and Chabot alleges that MLU submitted false claims to FEMA by certifying that it was licensed to install "manufactured homes." MLU has not explained why the term "manufactured homes" would mean anything other than

---

[1] MLU's motion to dismiss asserts that the attached contract was "the only contract it had with FEMA during the time period alleged in the Complaint." (Doc. No. 13 at 4.) However, the Court cannot consider this statement as evidence. *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]tatements and arguments of counsel are not evidence. . . .").

exactly what it says. *See*, *e.g.*, *Qantum Commc'ns Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249, 1265 (S.D. Fla. 2007) ("There is well-established precedent under Florida law and case law in the Eleventh Circuit that contracts are to be given their plain meaning.")

### III.    Motion to Strike

MLU moves to strike paragraphs fourteen through twenty-six because they are "immaterial." (Doc. No. 13 at 6.)   Under Federal Rule of Civil Procedure 12(f), a court may, on its own motion or by motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citing cases).  Because this standard is rarely met, "[m]otions to strike are generally disfavored by the Court and are often considered time wasters." *Somerset Pharm., Inc. v. Kimball*, 168 F.R.D. 69, 71 (M.D. Fla 1996).

The investigation detailed in paragraphs fourteen through twenty-six describes how Chabot learned of the alleged scheme that permitted MLU and other companies to obtain FEMA contracts without meeting Florida's licensing requirements.  At the very least, Chabot's investigation is relevant to the issue of whether he is an "original source" of the information concerning MLU's alleged fraud. *See United States ex. Rel. Butler v. Magellan Health Servs.*, 74 F. Supp. 2d 1201, 1211 (M.D. Fla. 1999) (citing 31 U.S.C. § 3730(e)(4)(B)).  This is an issue that often arises in False Claims Act cases.  Thus, it cannot be said that Chabot's investigation "has no possible relationship to the controversy" or "confuse[s] the issues." *Reyher*, 881 F. Supp. at 576.  Furthermore, MLU has not demonstrated any prejudice from the inclusion of the paragraphs.

**Conclusion**

Based on the foregoing, the Court **DENIES** the Motion of MLU Services, Inc. to Dismiss the Complaint or, in the Alternative, Motion to Strike and Memorandum of Law in Support (Doc. No. 13, filed Dec. 21, 2007).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 25, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record