IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

UNITED STATES OF AMERICA
and GREGORY CHABOT,

       Plaintiff,                       Case No. 6:06-CV-1528-MSS-KRS

v.

MLU SERVICES, INC.,

       Defendant.
_____/

### DEFENDANT MLU SERVICES, INC.'S MEMORANDUM IN OPPOSITION TO RELATOR'S MOTION TO PERMIT PROOF OF DAMAGES PURSUANT TO SUPPLEMENTAL RULE 26 DAMAGES COMPUTATION

Defendant MLU Services, Inc. ("MLU"), files this memorandum of law in opposition to Relator Gregory Chabot's ("Chabot") Motion to Permit Proof of Damages Pursuant to Supplemental Rule 26 Damages Computation.  MLU hereby opposes Chabot's Motion on the grounds that Chabot's request is untimely and prejudicial and the supplemental damages computation is not a proper calculation of actual damages according to the Court's previous instructions.

### Memorandum of Law

**I.**    **Chabot's Supplemental Damages Computation is Untimely and Prejudicial**

On March 18, 2008, Chabot served his Initial Rule 26(a) Disclosures ("Initial Disclosures") in which Chabot provided a computation of the damages he is seeking in this case. (A true and correct copy of Chabot's Initial Rule 26(a) Disclosures is attached as **Exhibit A**).  In these Initial Disclosures, Chabot stated that his damages were "treble damages of the contract amount, which is believed to be $7,500,000, for a total of $22,500,000.  (Exhibit A).  This damages computation has never changed throughout this litigation until Chabot filed the instant

Motion on April 2, 2010.  For the first time, almost two weeks prior to trial, Chabot seeks to amend these Initial Disclosures and introduce evidence of an entirely new damages model.  This attempt to modify the damages model on the eve of trial is both untimely and prejudicial to MLU.

Not only has Chabot waited until the eve of trial to now supplement his Initial Disclosures, this supplement also comes after the close of discovery.  The Court entered a Case Management and Scheduling Order on March 19, 2008, which set the discovery deadline in this case for July 1, 2009.  (Dkt. 27).  The parties previously requested and were granted a thirty day extension of the discovery deadline until August 1, 2009.  (Dkt. 38).  Accordingly, the discovery deadline was closed in this case on August 1, 2009, as the additional extensions granted by the Court were for the sole purpose of conducting additional depositions requested by the parties.[1]

A)   **Chabot's late supplemental Rule 26 Disclosures violate Rule 26 and Rule 37 and are not substantially justified**

As a general matter, disclosing a computation of damages under Rule 26(a) is necessary for the opposing party to produce responding evidence, such as an expert report." *EEOC v. GLC Restaurants, Inc.,* No. CV 05-618 PCT DGC, 2007 WL 30269, *9 (D.Ariz. Jan.4, 2007); *see also Hewlett Packard Co. v. Factory Mut. Ins. Co.,* 2006 WL 1788946, *14 (S.D.N.Y. June 28, 2006) ("[E]arly disclosure of a party's damages computation 'provide[s] [the] opposing party with an

---

[1] The parties' subsequent request for an extension of the August 1, 2009 discovery deadline (Dkt. 42) was granted in part and denied in part, in that the Court granted a limited extension of the discovery deadline until October 1, 2009 for the purpose of taking six additional depositions requested by the parties.  (Dkt. 43).  As the Court is aware, on September 15, 2009, this case was stayed due to Chabot's counsel's medical condition.  Subsequent to the lifting of the stay, the Court permitted the parties an additional sixteen days until March 1, 2010, to complete the five previously set depositions.  (Dkt. 74).  The Court specifically found that the parties could take no additional depositions other than those discussed in their Joint Motion (Dkt. 42) and granted in the August 6, 2009 Order (Dkt. 43).  (Dkt. 74).  Thus, this limited sixteen day extension was not an extension for written discovery, but rather only the previously requested depositions, which Chabot did not end up taking.

early understanding of the basis and amount of any damages claim it is facing, so that it may conduct meaningful discovery as to the underpinning of such a claim' ").

Under Federal Rule of Civil Procedure 37, failure to timely disclose computation of damages under Rule 26(a) results in virtually automatic preclusion of that information. *See Austrian Airlines v. UT Finance Corp.*, 2005 WL 977850, at *2 (S.D.N.Y. 2005) (granting defendant's motion to strike plaintiff's damages claim not disclosed in plaintiff's Rule 26(a)(1) initial disclosures). Rule 37 provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).

Moreover, multiple Courts have found that supplemental disclosures regarding a party's claimed damages must come prior to the close of discovery to be meaningful and to comply with Rule 26. *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175 (9th Cir. 2008)(finding that disclosure of damages computation after close of discovery was not harmless because it required court to create a "new briefing schedule and perhaps re-open discovery"); *Steinberg v. Sunbelt Transformer Co.*, 2008 WL 5429587 (C.D.Cal.)(finding that late disclosure of damages calculation was not harmless when disclosure took place after discovery).

In light of the plain reading of both Rule 26 and Rule 37, Chabot should not be permitted to modify its damages computation for the first time approximately two weeks before trial and more than eight months after the close of discovery. Chabot has consistently stated in both his Initial Disclosures and his Verified Amended Complaint filed on May 1, 2009 (Dkt. 35, paragraph 36) that the damages he seeks are the full contract value of MLU's contract with FEMA of approximately $6.9M, which amount would then be trebled.

3

Purportedly as a result of an adverse damages ruling in the RCG trial held in September, 2009, Chabot now seeks to completely change this damages theory in a futile attempt to comply with the damages instruction the Court has consistently provided concerning actual damages. Chabot has now changed his damages theory from the full contract amount, to a calculation in which he claims to have deducted from the full contract value, certain amounts paid to various subcontractors MLU utilized to perform some portions of its work under the FEMA contract. Chabot also is apparently deducting certain "other costs" contained in certain MLU invoices from the contract amount paid to MLU.  Clearly, this is an entirely new damages theory and computation that is now disclosed almost two weeks before trial and months after the close of discovery.

**B)**    **Chabot's failure to disclose is not harmless and will prejudice MLU**

MLU is prejudiced by this late disclosure as it is unable to retain an expert to analyze these calculations or otherwise conduct discovery concerning the basis of these calculations. MLU has been conducting this case on the basis of Chabot's initial disclosure that he intends to seek damages for a full contract amount, a position with which MLU has consistently disagreed. Based on this reliance, MLU has not sought to retain a damages expert, but instead chose to challenge Chabot's entitlement to full contract damages at trial.  Furthermore, MLU has not conducted discovery with the subcontractors it utilized and whose various invoices are now being used by Chabot to support a new damages theory.  MLU cannot now conduct new discovery with any of the various subcontractors to explore the basis of their charges and confirm the amounts upon which Chabot now uses to calculate his damages.  Indeed, MLU cannot conduct discovery of these subcontractors to investigate whether the subcontractor invoices are complete.  As this Court has found in the Nu-Way trial, a late disclosed damages

theory is unduly prejudicial to the defendant and Chabot should be held to the damages proof disclosed in his Initial Disclosures.  (See Nu-Way Transcript attached as **Exhibit B**)

Chabot attempts to justify this late disclosure on the grounds that the subcontractor documents which purportedly support his calculations were not produced by MLU until March 18, 2010.  While MLU did produce certain subcontractor invoices on March 18, 2010, it must be noted that ***Chabot had never previously requested production of these invoices*** at any point in the case.  The very first time Chabot sought production of these subcontractor invoices was in an email to the undersigned counsel on February 24, 2010.  In that email, Mr. Meredith cites to deposition testimony from MLU employees William Ulm and James Kelly in which they reference the existence of certain subcontractor lists or invoices, but Chabot never issued a request for production for any of these documents.[2]  Just because a witness might identify a document during a deposition does not impose an obligation to produce that document without a formal discovery request.   Moreover, MLU was not required to produce these subcontractor invoices under Rule 26, as it had no intention on ever using them during its defense at trial.

Accordingly, Chabot's excuse that the subcontractor documents were not produced until March 18, 2010 does not provide any justification, much less "substantial justification" for his violation of Rule 26, as it is undisputed he never previously requested production of such documents.  The belated *email* request for these documents from Chabot in February, 2010, more than six months after the close of discovery does not show good cause or a justification for a

---

[2] In his Second Request for Production Chabot did ask for all documents relating to "agreements MLU entered into with Florida licensed or unlicensed mobile/manufactured home installers for the purpose of performing installation or set-up activities involving mobile/manufactured homes under your contracts with FEMA . . ."  MLU timely responded to this request that it had no responsive documents because MLU *never installed any mobile/manufactured homes*, as it contracted with FEMA to install *only* travel trailers.  Accordingly, MLU did not utilize any subcontractors *for the purpose of installing mobile/manufactured homes.*

Rule 26 violation.  Chabot simply waited until much too late to amend his damages theory and cannot justify his delay when he never requested during discovery the documents he now uses to support his computations.

Chabot also seeks to justify his Rule 26 violation on the grounds that the other documents which form the basis of his new computations have been in MLU's possession for some time. This justification is premised upon a fundamental misunderstanding of the purpose of the Rule 26 disclosure.  Rule 26 requires disclosure of a damages *theory or model*, even if the precise computation of those damages cannot be accomplished at the time of an initial disclosure.  For example in *Austrian Airlines Oesterreichische Lufverkehrs AG v. UT Finance Corp.,* 2005 WL 977850, *2 (S.D.N.Y. Apr.28, 2005), the Court found that even if a plaintiff could not calculate its damages at the time of its initial disclosures, there was no reason why it could not disclose its damages theory at that time.  Id. at *2.  Faced with a plaintiff who amended its Rule 26 disclosures two weeks before trial to add a new damages theory, the *Austrian Airlines* Court found that the plaintiff could not assert a new, additional damages theory "at the eleventh hour." *Id.; see also Estate of Gonzalez v. Hickman,* 2007 WL 3237635 (C.D. Cal. 2007)(finding that the failure to disclose a damages theory of lost earnings in Rule 26 disclosures precluded plaintiff from offering proof of those damages at trial); *24/7 Records, Inc. v. Sony Music Entertainment, Inc.,* 566 F.Supp.2d 305 (S.D.N.Y. 2008)(striking a plaintiff's "income producing asset" damages theory which was disclosed a mere "weeks" before trial); *Green Edge Enterprises, Inc. v. Rubber Mulch Etc. LLC,* 2009 WL 1383275 (E.D. Mo. May 14, 2009) (party's failure, after four years of discovery, to disclose the types of damages it sought until it filed its pre-trial compliance and failure to provide any calculations as of the eve of trial left opposing parties

subject to "trial by ambush" such that new damages calculations were precluded from presentation at trial).

In this case, even if Chabot could not precisely calculate the amount of actual damages it now seeks, the failure to disclose this damages theory until two weeks before trial should result in exclusion of this damages evidence under Rule 37.  Chabot made no attempt until months after the close of discovery on August 1, 2009 to either seek any additional documents it needed or supplement and inform MLU of its distinctly changed damages theory.  The fact that MLU might have had the documents on which Chabot now bases his calculations is irrelevant as MLU was not informed of what particular computations Chabot intended to present, other than the "full contract value," trebled.  Rule 26 requires more than simply producing documents from which damages can be deduced, but rather requires disclosure of damages computations and the documents and facts supporting them.  *See Design Strategy v. Davis*, 469 F.3d 284 (2d Cir. 2006)(finding that plaintiff's disclosure of financial statements from which damages could be derived was not sufficient under Rule 26, which requires disclosure of computation and supporting documents).

Accordingly, Chabot's newly disclosed damages theory violates Chabot's obligations under Rule 26 and is unduly prejudicial to MLU at this late date.  There is no justification or good cause for these late disclosures and thus, under Rule 37, Chabot should not be permitted to offer proof of the damages as reflected in his "supplemental" disclosures.

II.    **Chabot's Supplemental Rule 26 Damages Computation is Not an Accurate Measure of the Government's purported Damages.**

Even assuming that Chabot's Supplemental Rule 26 Disclosures did not violate Rule 26 and warrant exclusion by being untimely, the Court should not permit proof of these damages as they are not a proper quantification of the Government's purported damages.

It has been held that if indeed the government has suffered damages, those damages are measured by the amount of money the government paid by reason of the false statement above what it would have paid absent the false statement. *See Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922-23 (4th Cir. 2003); *United States v. Ekelman & Assocs.*, 532 F.2d 545, 550 (6th Cir. 1976); *U.S. ex rel Doe v. DeGregorio*, 510 F. Supp. 2d 877, 890 (M.D. Fla. 2007). Accordingly, where the government pays out the same amount as it would have had the false statement at issue been true, then the Government has suffered no damage. *United States v. Hibbs*, 568 F.2d 347, 351 (3d Cir. 1977).

In the instant case, the Court has held in the Nu-Way, Wilson Transport and Peredes cases that the true measure of the Government's damages is how much the Government paid in excess of what it would have paid for the services absent the false representation. As stated more clearly in the jury instructions used by the Court in both the Nu-Way and Peredes cases, the difference between what the Government paid and the value of what the Government received.

This approach to calculating damages is consistent with the approach other courts have taken when the Government has received value for the services that are the subject of the action. The Court of Federal Claims addressed this issue in *Ab-Tech Construction, Inc. v. United States*, 31 Fed. Cl. 429 (Fed. Cl. 1994), (a case factually similar to this case) and rejected an argument similar to that made by Chabot in this case. In *Ab-Tech*, the contractor had submitted payment

vouchers certifying that it was adhering to the requirements for participation in a Small Business Act Program. The court found that the contractor's false certification of compliance with the program requirements amounted to a false claim, but in response to the Government's claim that the amount of damages was the full amount paid under the relevant contract, the court held:

> The court cannot go along with this demand. Damages represent compensation for a loss or injury sustained. Here, however, no proof has been offered to show that the Government suffered any detriment to its contract interest because of Ab-Tech's falsehoods. Rather, viewed strictly as a capital investment, the Government got essentially what it paid for-an automated data processing facility built in accordance with the contract drawings and specifications. Thus, the court can discern no basis upon which to uphold the Government's demand for treble damages.

*Id.* at 434.

In *U.S. v. Bornstein*, 423 U.S. 303 (1976), the Supreme Court adopted this same position, finding that "[t]he Government's actual damages are equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality." *Id.* at 13.

In the context of a defendant that was a federal government contractor charged with developing a training program for employees of a facility utilized to store certain radioactive waste, the Fourth Circuit applied a similar measure of damages. *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 911 (4th Cir.2003). In *Harrison*, the defendant contractor had falsely certified that there were no conflicts in relation to a particular subcontract, and the court found that the plaintiff could not recover damages in the entire amount of the money paid out by the federal government on that subcontract because plaintiff had not shown that the subcontractor "failed to perform the work that it was required to perform under the subcontract or that the government did not receive the benefit of the work performed." *Id.* at

923.

> In *Harrison*, the relator argued, as Chabot does here, that

> the district court erred by ruling that he could not seek disgorgement of all monies paid by DOE to Westinghouse as damages. He claims that the subcontract was void *ab initio* because of the fraud perpetrated by [Defendant], and therefore, the $9 million that DOE paid for the work [a subcontractor] performed under the subcontract should be disgorged.

*Id.* at 922. The district court in that case and the Fourth Circuit rejected the relator's arguments finding that "[a]lthough [Defendant] ran afoul of the fair bidding requirements, there was no evidence adduced at trial suggesting that [the subcontractor] failed to perform the work that it was required to perform under the subcontract or that the government did not receive the benefit of the work performed." *Id.* at 923.

The damages that Chabot must submit evidence to prove, is the same as it was in *Ab-Tech*, *Bornstein* and *Harrison*: the difference in value between what was contracted for and what was received. Where, it cannot be shown that a defendant failed to perform the work that it was required to perform under the contract or that the government did not receive the benefit of the work performed or that the government did not get what it paid for, the government is entitled to no recovery of damages. *Harrison*, 352 F.3d at 923; *Ab-Tech*, 31 Fed. Cl. at 434.

The computation Chabot has submitted in its Supplemental Rule 26 Disclosures fails on its face to meet the standard of evidence measuring the benefit received by the Government. To merely subtract some portion of what MLU paid to various subcontractors from the total contract amount is not an accurate measure of the "benefit" received by the Government. First, this method does nothing to indicate the benefit conferred to the Government by MLU's administration of the contracts and organization of activities provided thereunder. The benefit received by the Government included far more than just the physical installation or hookup

10

services performed by subcontractors, as MLU handled substantial logistics in the scheduling, coordinating and overseeing of more than a thousand travel trailer installations.   The delta between the amount paid to MLU by FEMA and the amount MLU paid to the subcontractors does not represent MLU's "profit" on the job nor is it a reasonable measure of the Government's benefit of the bargain.

Second, the FEMA representative, Bryan McCreary, whose deposition MLU has already designated for trial, specifically testified that the price charged by MLU was determined by the Government to be fair and reasonable for the services performed and that the Government got the full "quantitative" value of the services for which it contracted.  (McCreary, Dec. 11, 2009 Depo.: 44:11-15; 63:3-8).  McCreary could not identify any work which the Government paid for, but did not receive from MLU and admitted that it was possible that the Government might have paid the full contract amount to MLU, even if MLU was found to lack a license which was required for the work.  *Id.* at 61:11-62:14.  These statements taken together indicate that the amount of the benefit upon the Government was the amount charged by MLU.  Given that the only witness who is in any way authorized to speak for the Government in this case has testified at deposition, that the Government received what it contracted for and that the Government suffered no measurable (quantitative) harm, there is no reason for Chabot to be allowed to submit proof of his supplemental damages computations.

Finally, Chabot's supplemental damages calculations are not a reasonable measure of the benefit to the Government, because Chabot is simply deducting from the full contract value, the amounts paid to certain subcontractors.  Chabot has no evidence from which a jury could make a determination as to what travel trailer installations involved the use of various licensed electricians or plumbers and thus could have required a Division I contracting license under Fl.

11

St. 489. Not all the travel trailer installations involved MLU subcontracting with licensed electricians or plumbers and thus not all the travel trailer installations could be a potential false claim. Chabot simply seeks to deduct some portion of the subcontractor payments, without regard to what those payments represent, what installations they relate to and most importantly, what false claim they connect to. Chabot should not be permitted to bring in such speculative evidence of damages.

## Conclusion

For the foregoing reasons, Chabot should not be permitted to belatedly supplement his damages calculations more than two years after his initial Rule 26 Disclosures, and more than eight months after the close of discovery. The supplemental computations are untimely, prejudicial to MLU and are not a proper measure of the damages, as instructed by the Court. MLU respectfully requests the Court deny Chabot's Motion to Permit Proof of Damages Pursuant to Supplemental Rule 26(a) Disclosures.


Submitted this 9th day of April, 2010.

> /s/ Mark D. Kiser
> JOHN S. VENTO
> jsvento@trenam.com
> Florida Bar No. 329381
> MARK D. KISER
> mkiser@trenam.com
> Florida Bar No. 0420409
> TRENAM, KEMKER
> 101 East Kennedy Boulevard, Ste 2700
> Tampa, Florida 33602
> (813) 223-7474 / (813) 229-6553 facsimile
> Attorneys for Defendant, MLU Services, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of April, 2010, the foregoing was filed with the Clerk of this Court by CM/ECF, which will send an electronic notice of filing to the following:

Jennifer Chorpening
U.S. Department of Justice – Civil Division
PO Box 261
Washington, DC  20444

Phillip R. Lammens, Esq.
Office of US Attorney
207 NW 2nd Street, Room 118
Ocala, FL  34475-6666

Paul M. Meredith
The Meredith Law Firm
5 Palm Row –Ste A
P.O. Box 38
St. Augustine, FL  32085-0038
Fax: (904) 825-1912


By:     */s/ Mark D. Kiser*
        Attorney

13

**EXHIBIT "A"**

FILE COPY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA and
GREGORY CHABOT,

      Plaintiff,

vs.                        CASE NO.: 6:06-cv-1528-Orl-19KRS

MLU SERVICES, INC.,

      Defendant.

_____/

### RELATOR CHABOT'S RULE 26(A)(1) INITIAL DISCLOSURES

Pursuant to the parties agreed Case Management Report, filed February 27, 2008 [Doc. 25], Relator Chabot hereby discloses the following persons it may call as witnesses and documents it may use as exhibits at trial in this matter as follows:

### I.  WITNESSES

The addresses of the witnesses disclosed may be located on the documents being produced concurrently herewith.  In general, the various witnesses have knowledge of the allegations of the Complaint as well as defenses thereto.

<u>Various State Agencies</u>

1.      Dwight F. Davis, Florida Bureau of Mobile home and RV Construction, Division of Motor Vehicles, Florida Department of Highway Safety and Motor Vehicles.  The extent of this witness' knowledge is unknown at this time.  However, he is expected to have knowledge of policies, procedures, licensing requirements, bid solicitations relating to mobile home services subject to this litigation.

2.      Cathy Griner, Florida Bureau of Mobile home and RV Construction, Division of Motor Vehicles, Florida Department of Highway Safety and Motor Vehicles.  The extent of this witness' knowledge is unknown at this time.  However, she is expected to have knowledge regarding policies, procedures, licensing requirements, bid solicitations relating to mobile home services subject to this litigation.

3.      Phil Bergelt, Florida Bureau of Mobile Home and RV Construction, Division of Motor Vehicles, Florida Department of Highway Safety and Motor Vehicles.  The extent of this witness' knowledge is unknown at this time.  However, he is expected to have knowledge

regarding policies, procedures, licensing requirements and bid solicitations relating to mobile home services subject to this litigation.

<u>Various Local Agencies</u>

4.     Michelle (Last name not yet known), Hardee County Building & Zoning Department, 401 West Main Street, Wauchula, FL 33873. The extent of this witness' knowledge is unknown at this time. However, she is expected to have knowledge regarding permits issued and license activity for Hardee County.

5.     Records Custodian, Walton County, County Courthouse Annex, 47 N. 6th Street, Defuniak Springs, FL 32459. The extent of this witness' knowledge is unknown at this time. However, they are expected to have knowledge regarding permits issued and license activity for Walton County.

6.     Larry Hilton, Chief of Development, Desota County/Arcadia, 201 E. Oak Street, Suite 204, Arcadia, FL 34266. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding permits issued and license activity for Desoto County.

<u>Federal Agencies/Departments</u>

7.     Cathy McNamara, Department of Homeland Security. The extent of this witness' knowledge is unknown at this time. However, she is expected to have knowledge regarding Request for Quotations (RFQ) and the bidding process subject to this litigation.

8.     Vicky Lewis, The extent of this witness' knowledge is unknown at this time. However, she is expected to have knowledge regarding public records requests made pursuant to the Freedom of Information Act (FOIA) subject to this litigation.

9.     Bryan McCreary, FEMA, U.S. Department of Homeland Security. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding Request for Quotations (RFQ) and the bidding process as well as FEMA contracts awarded subject to this litigation.

10.     Jonathan Gibb, FEMA, U.S. Department of Homeland Security. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding Request for Quotations (RFQ) and the bidding process as well as FEMA contracts awarded subject to this litigation.

11.     Richard Spillane, FEMA, U.S. Department of Homeland Security. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding Request for Quotations (RFQ) and the bidding process as well as FEMA contracts awarded subject to this litigation.

12.     Patricia English, Head of Contracting Activity, Financial & Acquisition Management Division, FEMA, U.S. Department of Homeland Security. The extent of t his witness' knowledge is unknown at this time. However, she is expected to have knowledge regarding public records requests submitted, pursuant to the Freedom of Information Act, subject to this litigation.

13.     Elaine I. Chan, General Attorney, Office of General Counsel, FEMA, U.S. Department of Homeland Security. The extent of this witness' knowledge is unknown at this time. However, she is expected to have knowledge regarding public records requests submitted, pursuant to the Freedom of Information Act, subject to this litigation.

14.     Jimmy Jordan, Resource Support, Long Term Recovery Office-Orlando, (407) 856-3074, FEMA, U.S. Department of Homeland Security. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding Request for Quotations bidding process, procedures, and notifications as well as FEMA contracts awarded subject to this litigation.

15.     Robert Burton, Executive Office of the President, Office of Management and Budget, Washington, D.C. 20503. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding online procurement techniques related to collecting bid response data from federal agencies.

16.     Janice Gurganus, FEMA, U.S. Department of Homeland Security. DR-1539 Disaster Field office, 100 Sunport Lane, Orlando, FL 32809, (407) 858-2000. The extent of this witness' knowledge is unknown at this time. However, she is expected to have knowledge regarding the contracts awarded for set-up and installation

General Witnesses

17.     Ken Cashin, Florida Mobile Home Supply, Inc., 1250 G. Bloutstown Hwy, Tallahassee, FL 32304.     President of Windstorm Mitigation, 732 Blountstown Hwy, Tallahassee, FL 32304. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding FEMA/Department of Homeland Security Request for Quotations (RFQ) and the bidding process subject to this litigation.

18.     John David Edenfield, Middleburg, FL, (904) 282-8362. The extent of this witness' knowledge is unknown at this time. However, this witness is expected to have knowledge relating to the installation, deactivation and maintenance of mobile homes and travel trailers subject to his litigation.

19.     Joe Chatman, Ft. White, FL (386) 497-2277. The extent of this witness' knowledge is unknown at this time. However, this witness is expected to have knowledge relating to the installation, deactivation and maintenance of mobile homes and travel trailers subject to his litigation.

20.    John McDonald, Former Vice President of Windstorm Mitigation, Tallahassee, FL and former Supervisor with the Florida Bureau of Mobile Home and RV Construction, Division of Motor Vehicles, Florida Department of Highway Safety and Motor Vehicles. The extent of this witness' knowledge is unknown at this time. However, he is expected to have knowledge regarding FEMA/Department of Homeland Security Request for Quotations (RFQ) and the bidding process subject to this litigation.

21.    Robin Chabot, 2107 Northeast 188th Place, Gainesville, FL 32609. This witness has knowledge as to Relator Chabot's original discovery of the unlicensed activity, his filed investigations of that activity and his subsequent corroboration of the activity through public records requests.

<u>Parties</u>

22.    Gregory Chabot, Relator. Has knowledge as the allegations contained in the subject Complaint.

23.    MLU Services, Inc. This witness is expected to have knowledge regarding the bidding process and contracts awarded to MLU subject to this litigation.

<u>Others</u>

24.    Any person whose name appears on any of the documents produced by either party in this action.

25.    Any person disclosed by Defendant, MLU Services, Inc. in its initial disclosures or any subsequent disclosures.

Plaintiff/Realtor Gregory Chabot expressly reserves the right to modify, withdraw or supplement the foregoing list with the names of other individuals as discovery unfolds in this case.

## II. DOCUMENTS

Plaintiff/Relator Chabot has produced approximately 1785 pages of documents on March 13, 2008, which have been Bates labeled Chabot Rule 26 00001 – 01785. Relator expressly reserves the right to modify, withdraw or supplement its production with other documents as discovery unfolds in this case.

## III. COMPUTATION OF DAMAGES

Treble damages of the contract amount, which is believed to be $7,500,000, for a total of $22,500,000.

DATED: March 18, 2008

THE MEREDITH LAW FIRM

PAUL M. MEREDITH
Trial Counsel for Plaintiff
P.O. Box 38
St. Augustine, Florida 32085-0038
Telephone: (904) 825-1942
Facsimile: (904) 825-1912
Florida Bar No.: 0745741
meredithlawfirm@bellsouth.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to

the following by facsimile & U.S. Mail on this 18th day of March, 2008:

**Samuel D. Armstrong, Esquire**
Assistant United States Attorney
501 W. Church Street, Suite 300
Orlando, FL 32805

**Jennifer Chorpening, Esquire**
Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, D.C. 20044

**Mark D. Kiser, Esquire**
P.O. Box 1102
Tampa, FL 33601

PAUL M. MEREDITH

**<u>EXHIBIT "B"</u>**

MR. KLEINBERG: Yes, ma'am.

5       THE COURT: And she's being offered as a summary

6 witness?

7       MR. KLEINBERG: No, ma'am. She's being offered --

8 there are two piles of checks from the subcontractors. She

9 has sorted them out for doubleses and she's taken out any

10 invoices for permitting, so the only thing left our position

11 is are the checks from Nu-Way to the subcontractors, and she

12 will testify about as quickly as I just described as to what

13 she did and how she prepared this document which will be an

14 exhibit that I would try to introduce into evidence.

15      THE COURT: All right.

16      MR. FOREHAND: Your Honor, the exhibit, of course, I

17 got yesterday.

18      THE COURT: I understand.

19      All right. She will not be allowed to testify. The

20 exhibit will not be allowed to be introduced during the course

21 of the trial. The plaintiff is left with the damages

22 plaintiffs sought to introduce under the Rule 26 disclosures

23 and under his pre-trial statement left unamended throughout

24 the entire break between the case and up until the date of the

25 first day of trial. I just cannot fathom any way to undo the

9

1  prejudice that will be caused to the defense.  They were

2  called upon to stop the trial and begin to try to address a

3  new damages theory in the case, so she will not be called and

4  the evidence will not be introduced.  And then I'll deal with

5  this new witness, if she is necessary to be called, once I

6  guess Mr. Meredith has inquired of or somebody has inquired of

7  when the plaintiff first learned of her knowledge concerning

8  relevant facts in the case.

9        Is there anything else?

10        MR. FOREHAND:  Your Honor, I guess I don't know --

11  if it relates to Mr. Miller, his deposition was taken in

12  October of 2008, so I don't know if their contention is

13  thinking that it's based on something he said in his depo or

14  they're just hypothetically thinking about anything he might

15  say.

16        THE COURT:  Once we get to that point, after they've

17  heard him testify, they can decide whether they want to seek

18  to impeach him using this person and A at that point the Court

19  will take up when she was discovered, because I'm hearing they

20  don't know when she was discovered, and they need to ask, I

21  assume, Mr. Meredith or somebody else when she was discovered

22  and then we'll address it.

23       MR. FOREHAND:  Thank you, Your Honor.

24       THE COURT:  Am I accurate?

25       MR. DARKEN:  All I know, Your Honor, is that she --