UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA
ex rel. GREGORY CHABOT,
as *qui tam* Plaintiff,

      Plaintiffs,

v.                                                        Case No. 6:06-cv-1528-ORL-35KRS

MLU Services, INC.,

      Defendant.
_____

ORDER

    **THIS CAUSE** comes before the Court on Defendant's Motion for Summary

Judgment, filed on August 17, 2009 (Dkt. 44), and Plaintiff's response thereto (Dkt. 76)[1].

Upon consideration of all relevant filings, case law, and being otherwise fully advised, the

Court hereby **DENIES** Defendant's motion.

### I.    Standard of Review

    Summary judgment is appropriate when the movant can show that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of

_____
[1] Plaintiff submitted exhibits in support of his Response to Defendant's Motion for Summary Judgment at docket entry 77.

law.   <u>Fennell v. Gilstrap</u>, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing <u>Welding Servs.,</u>

<u>Inc. v. Forman</u>, 509 F.3d 1351, 1356 (11th Cir. 2007)).   Which facts are material depends

on the substantive law applicable to the case.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of

material fact exists.   <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party.   <u>Fennell</u>, 559

F.3d at 1216 (citing <u>Welding Servs., Inc.,</u> 509 F.3d at 1356).   A moving party discharges

its burden on a motion for summary judgment by showing or pointing out to the Court that

there is an absence of evidence to support the non-moving party's case.   <u>Denney v. City</u>

<u>of Albany</u>, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).   When a moving party

has discharged its burden, the non-moving party must then go beyond the pleadings, and

by its own affidavits, or by depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial.   <u>Porter v. Ray</u>, 461

F.3d 1315, 1321 (11th Cir. 2006) (citation omitted).   The party opposing a motion for

summary judgment must rely on more than conclusory statements or allegations

unsupported by facts. <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985)

("conclusory allegations without specific supporting facts have no probative value.").

## II.    Analysis

In this case, *qui tam* plaintiff Gregory Chabot ("Plaintiff") brings a **single** count on

behalf of the United States against MLU Services, Inc., ("Defendants") under the False

Claims Act ("FCA"), 31 U.S.C. Section 3729 et seq. (2003).   (Dkt. 1)   As a preliminary

matter, the Court notes that Plaintiff consistently cites "Section 3729(1)(2)" (See Dkt. 1, at

¶¶ 6, 30) as the source of Defendant's liability under the Act; however, there is no such

section in the statute.   It appears that Plaintiff is intending to cite to 31 U.S.C. Sections

3729(a)(1) and (a)(2) (2003).   A plaintiff may concurrently bring a claim against a defendant for violating Section 3729(a)(1) and/or Section 3729(a)(2).   See United States ex rel. Bane v. Breathe Easy Pulmonary Servs., 597 F. Supp.2d 1280 (M.D. Fla. 2009). As such, Plaintiff's claim will be evaluated under law applicable to Sections 3729(a)(1) and 3729(a)(2).

Sections 3729(a)(1) and 3729(a)(2) are similar but differ slightly.   Pursuant to Section 3729(a)(1), a defendant is civilly liable if he or she presents or causes to be presented a false or fraudulent claim to the United States for payment while knowing that the claim is false.   Bane, 597 F. Supp.2d at 1286 (citing United States ex rel. Walker v. R&F Props. of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005)).   Pursuant to Section 3729(a)(2), a defendant is civilly liable if he or she knowingly uses a false record or statement to induce a false or fraudulent claim to be paid or approved by the United States.   Bane, 597 F. Supp.2d at 1288.    For purposes of both Sections 3729(a)(1) and 3729(a)(2), a person acts "knowingly" when that person has actual knowledge of a falsity, acts in deliberate ignorance of the falsity, or acts in reckless disregard of the truth or falsity.  31 U.S.C. Section 3729(b) (2003).   By the express terms of the statute, "no proof of specific intent to defraud is required."   Id.

In his Verified Amended Complaint, Plaintiff alleges that Defendant submitted seven false claims to the United States' government, pursuant to the Request for Quotation package ("RFQ") with the Federal Emergency Management Agency ("FEMA") for the installation of manufactured homes in Florida in 2004 and 2005 under FEMA's Disaster Relief declarations DR 1539, DR 1545, DR 1551, and DR 1561.    (Dkt. 39 at ¶¶ 34-36; Dkt. 77-9 at 1; Dkt. 77-11).   In the Verified Amended Complaint, Plaintiff contends that:

> [W]ith knowledge of their falsity or with reckless disregard for the truth of their falsity, [Defendant] did make, use, or cause to be used, false certifications claiming that it was duly licensed to install manufactured housing and therefore eligible to present claims to the FEMA disaster relief office in Orlando for such installation and construction activities at excessive prices on 11/17/2004 for $1,000,000; on 11/08/2004 for $1,000,000; on 12/09/2004 for $2,000,000; on 02/05/2004 for $2,000,000; on 02/17/2005 for $250,000; on 03/22/2005 for $750,000; and on 03/28/2005 for $500,000 for a total of $7,500,000, after adjustments $6,919,211.00, received in violation of 31 U.S.C. § 3729 (1),(2) [sic].

(Dkt. 39 at ¶ 36)   Specifically, Plaintiff claims that Defendant made false claims to FEMA because it failed to comply with a requirement under the FEMA contract (the "Contract"), which, Plaintiff maintains, required Defendant to conform to all state and local licensing requirements for persons acting as Florida manufactured home installers when carrying out the FEMA RFQ/contract.   Id.

In its Motion for Summary Judgment, Defendant contends that, as a matter of law, Plaintiff cannot prove that Defendant made any false claim to the United States Government.   Specifically, Defendant contends that it is entitled to summary judgment on the basis that (1) Defendant did not submit false claims since it was not required to have a either a MHI license or Florida general contractor's license to install travel trailers (Dkt. 44 at 11, 13-17); (2) even if false claims were submitted by Defendants, they were not knowingly false (Dkt. 44 at 11, 17-18); and (3) statutory compliance was not a precondition to payment under the FEMA contract (Dkt. 44 at 11, 18-22).   Each of these arguments is addressed in turn.

### A.   Whether Defendant Was Required to Obtain a License to Install Travel Trailers

Defendant's motion is primarily based on whether the installation of travel trailers on a "semi-permanent" basis, as arguably performed by the Defendant under its FEMA

contract, requires a license.   (Dkt. 44 at 6)   Defendant contends that it is entitled to relief because it only installed travel trailers,[2] not mobile homes,[3] and was therefore not required to possess a license under Florida law.   (Dkt. 44 at 1) Defendant contends that at no time during its performance of the FEMA contract did it bid on mobile homes, install mobile homes, "have the equipment to install a mobile home, or receive a mobile home from FEMA for installation."   (Dkt. 75; Dkt. 44-1)   Moreover, the Contract clearly pertains to the installation of travel trailers, as do the majority of MLU's work orders and schedule of fees.   (Dkt. 44-1 at 41; Dkt. 77-9 at 1-3)   In his deposition, MLU CEO, William Ulm ("Mr. Ulm") testified that any work orders that indicated "mobile home," instead of "travel trailer" were incorrectly marked due to FEMA's error.   (Dkt. 44-1 at 39-43, 95) Defendant argues that the pricing information is controlling here, and that regardless of the form indication, MLU installed all travel trailers for $4,970; an amount three times less expensive than installing a mobile home (Dkt. 44-1 at 92)

Nevertheless, as Defendant admits in its motion, it actually erected travel trailers in a manner that created some indicia of permanency.   (Dkt. 44 at 6)   Specifically, "the trailers were being strapped down, placed on cinder blocks, anchored to the ground, connected to a 30-amp electrical disconnect box, and connected by plastic pipe to the home's sewer cleanout system." Id.   Defendant asserts that securing the travel trailers in such a fashion was a requirement under the Contract and that it did not act beyond the scope of the work required under the Contract.   (Dkt. 44-1 at 72)

Defendant further maintains that it made "diligent inquiries to the federal and state authorities," which confirmed that a license was not required for travel trailer installation.

---

[2]  "Travel trailer" is defined in Fla. Stat. § 320.01(1)(b)(1).

[3]  "Mobile home" is defined in Fla. Stat. § 320.01(2)(a).

(Dkt. 44 at 14)   In determining that a license was not required for the installation, Defendant further relied on the testimony of Robert Stewart, a building official for Lee County ("Mr. Stewart"). Defendant asserts that after the hurricanes occurred, Lee County (the "County") changed its policy regarding travel trailer installation.   (Dkt. 44 at 5) During this "disaster situation," the County allowed "residents to install travel trailers on their private property without permits."   Id.; (Dkt. 44-3 at 62-68)   In his deposition, Mr. Stewart testified that the dire circumstances "requir[ed] that government policies 'evolve' in a 'fluid process'" to allow semi-permanent travel trailers.   (Dkt. 44 at 5; Dkt 44-3 at 100-102). Defendant concedes that, upon learning that residents were living in these travel trailers for as long as 18 months, the County eventually required permits for some of the trailers, but this occurred months after Defendant had installed the majority of the travel trailers.   Id.   Whether or not Mr. Stewart's understanding of the law is the prevailing view remains to be resolved at trial.   Additionally, at an earlier point in his deposition Mr. Stewart testified that he understood that if travel trailers were being installed in a semi-permanent manner "with anchors and straps and hard wiring like a mobile home," their installation would require a [Fla. Stat. 320 mobile home installer's] license and/or permit.   (Dkt. 44-3 at 8) Mr. Stewart later testified that blocking, leveling, and concrete setting are all aspects of the *mobile home* installation process.   (Dkt. 44-3 at 17-18) (emphasis added).   Mr. Stewart also testified that it is "necessary" for companies wishing to conduct installations to disclose the full scope of their proposed activities to the appropriate building authority.   (Dkt. 44-3 at 52-53)   In his deposition, Mr. Ulm testified that Defendant did not, in fact, disclose to local building officials the manner in which they intended to install the travel trailers.   (Dkt. 44-1 at 45-46, 75-77)

In his response, Plaintiff contends that "the scope of work is dispositive in licensing

questions." (Dkt. 76 at 4)   Plaintiff argues that while it is undisputed that Florida state law does not require a license for to install a travel trailer overnight at a camp ground, "[w]hen the installation includes blocking, anchoring and strapping down trailers" a very different situation is created. (Dkt. 76 at 5)   Mr. Stewart's testimony supports this contention to some extent. (Dkt. 44-3 at 52)

Accordingly, based on a review of the record in this case and the pleadings, depositions, and affidavits submitted by the parties, the Court finds that there is a factual dispute concerning the scope of the work Defendants performed, whether it was required to disclose the scope of its proposed work prior to the beginning of the installations, and whether the semi-permanent nature of its installations caused the Defendant's scope of work to fall within the type of installation services requiring a license under Florida law. For these reasons, Defendant's motion for summary judgment against Plaintiff on the basis that Defendant was not required to obtain a license for the installation work is **DENIED.**

### B.    Whether Defendant Practiced Unlicensed General Contracting By Hiring Subcontractors to Install Travel Trailers

Defendant additionally seeks summary judgment on Plaintiff's contention that Defendant engaged in the unlicensed practice of general contracting by hiring subcontractors in certain subspecialties in connection with the installation of travel trailers. Defendant contends in this regard that it was not required to have a general contractor's license to subcontract part of the installation work. (Dkt. 44) Defendant cites no case law to support its position; rather Defendant refers in passing to Florida's statutory framework regulating installation services and the affidavit of Paul Sierra ("Mr. Sierra"), a local building contractor who worked with MLU on the installation.   Mr. Sierra testified that, under Fla. Stat. §§ 320 and 489, a general contractor's license is required

only for the installation of a "building" or "structure," of which a travel trailer is neither. (Dkt. 44 at 15) Mr. Sierra further testified that the fact that the local building permit authority did not require Defendant to show proof of a license to install the travel trailers, or to subcontract is indicative of the fact that the building authorities "concluded that [Defendant's] activities were not ones which required a . . . contractor's license or building permit."  (Dkt. 44-5 ¶ 9)

In his response, Plaintiff points to Fla. Stat. 489.105(3) and asserts that in addition to being required for the installation of a "building" or "structure," a general contractor's license is also expressly required for "related improvements to real estate."   (Dkt. 76 at 13)   Plaintiff contends that the construction of "handicap ramps, staircases . . . power poles and electrical systems, sanitary sewer systems, and water distribution systems" all constitute improvements to real estate.   Id.   Plaintiff concludes that since Defendant subcontracted services that improved real estate, they engaged in construction activities, and their "construction activities require a general contracting license." (Dkt. 76 at 13-14)

Because the scope of work performed by the Defendant is still in dispute as discussed in Section II.A above, the Court finds that there is a factual dispute concerning whether Defendant's installation of travel trailers constituted general construction activities, for which a general contractor's license was required.

## C.   Whether Defendant Knowingly Submitted Any False Claims

Finally, Defendant contends that even if false claims were submitted, that they were not knowingly false.   (Dkt. 44 at 17)   Plaintiff counters that where the conditions of a contract require a person to meet licensing requirements in order to be eligible to enter into a contract with the government or eligible to seek payment from the government, liability may exist under the FCA if that person makes an implied false certification as to

his licensing status by submitting claims for payment.   See United States ex rel. McNutt v. Haleyville Medical Supplies, Inc., 423 F.3d 1256,1259 (11th Cir. 2005); United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 378 (5th Cir. 2004). Plaintiff contends that since Defendant knew it was unlicensed any claim for payment it submitted to the government was inherently false.

### 1.   FCA's Scienter Requirement

To establish a cause of action under the FCA,

> a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.

U.S. ex rel., Kaimowitz v. Ansley, 2007 WL 2948656 at *2 (11th Cir. 2007). Thus, the FCA requires proof that the defendant acted knowingly making the false claim or causing it to be made.   Pursuant to sections 3729(a)(1) and 3729(a)(2) of the FCA, a person acts "knowingly" when that person has actual knowledge of a falsity, acts in deliberate ignorance of the falsity, or acts in reckless disregard of the truth or falsity.   31 U.S.C. § 3729(b).   By the express terms of the statute, "no proof of specific intent to defraud is required."   Id.   In this case, the Defendant contends that "the term 'knowingly' under the FCA means Plaintiff must demonstrate that Defendant told "a lie," and Plaintiff has not presented any evidence that Defendant outright lied to the federal government. Defendant argues that it reasonably believed that Florida law did not require it to be licensed to install travel trailers; and that it's "good faith compliance with the Contract . . . is not a proper basis for finding a violation of the FCA."   (Dkt. 44 at 18)

As discussed in more detail in Section II.A of this Order, Plaintiff maintains that

Defendant's semi-permanent installation of the travel trailers rendered it more akin to a mobile home, for purposes of licensing.  (Dkt. 76)  Furthermore, Plaintiff asserts that had Defendant not failed to investigate each county's requirements, it would have learned that it needed "a [Fla. Stat.] 320 MHI license or a [Fla. Stat.] 486 general contractor's license or both to enter the contracts to install travel trailers" on a semi-permanent basis and to subcontract work pursuant to the Contract (Dkt. 76 at 16) Plaintiff asserts that ignorance of the law is no defense to violating the statute. (Dkt. 76 at 17) The Court finds that Plaintiff's argument is sufficient to raise a genuine issue of material fact as to whether Defendant submitted a false claim to the federal government.

### 2.  *Implied Certification Theory*

As an alternate theory of liability, Plaintiff alleges that in addition to making false claims to the government, Defendant knowingly made implied false *certifications of eligibility* when it submitted claims for payment for its unlicensed construction activity, knowing that full compliance with local and state laws was a precondition of payment under the Contract.  (Dkt. 76 at 14-18) Accordingly, Plaintiff maintains that Defendant "should be liable under the FCA for submitting a claim for payment after . . . breaching the statutory compliance clause in the Contract."  (Id.; Dkt. 44 at 18)  Defendant argues that it may be liable under the implied certification theory "only if compliance with the contracted term at issue is a 'precondition' to payment," which they contend it was not. (Dkt. 44 at 18)   The Contract terms and conditions provide in pertinent part,

> (a) Inspection/Acceptance.   The Contractor shall only tender for acceptance those items that conform to the requirements of this contract . . .
>              . . . .
> (i)  (1) [Payment] Items accepted.   Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract.
>              . . . .

(l) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience.

(m) The Government **may** terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions.

(Dkt. 77-9 at 4-6) (emphasis added) Additionally, under the "Travel Trailer Installation Specifications" section of the Contract, section A.1 provides that

[a]ll work performed in accordance with these specifications shall be in accordance with all applicable federal, state and local codes and regulations. The provision of these specifications and typical details shall not be construed as lowering standards established by local laws, ordinances or regulations.

(Id. at 20)   Similarly, section C.13 provides, in pertinent part, that "[t]he contractor shall be responsible for obtaining necessary permits associated with placing and installing the unit."   (Id. at 29)

To support his contention that the Defendant's alleged violations were material to the Contract performance, Plaintiff introduced the Affidavit of Bryan McCreary ("Mr. McCreary"), a FEMA Contracting Officer (Dkt. 77-10 at ¶ 1), who attested that, "both Fla. Stat. 320.8249(7), (8) and Fla. Stat. 489.127, are laws we expected the prime contractors to meet and were under a belief that they had.   Not only was it a condition of payment, we would have terminated the contracts if we would have known otherwise."   (Dkt. 77-10 at ¶ 6)   Mr. McCreary further stated that FEMA, consistent with its policy and contracts, instructed all bidders of Florida's licensing requirements that unless the contractors were licensed, they could not submit a bid or enter into a contract to install mobile homes. (Dkt. 76 at 19; 77-10 ¶¶ 7-8, 11)

In this case, neither party disputes that Defendant was unlicensed at the time it

installed the travel trailers pursuant to the RFQ.  Rather, the issues here are whether being licensed was, in fact, a condition of submitting a bid and subsequently entering into a contract with the government; whether Defendant knew that being licensed was a condition of payment under the Contract; and whether Defendant submitted claims for payment to FEMA despite knowing that it was both unlicensed and required to possess a license to carry out the contracted installation, which would make "the claims false under [S]ections 3719(a)(1) and (3).  McNutt, 423 F.3d at 1259.  Considering the contract terms and Mr. McCreary's affidavit, a genuine issue of material fact exists as to whether Defendant's compliance with statutory requirements was a pre-requisite for payment under the Contract.

Accordingly, upon review of Defendant's motion and the record in this case, the Court finds material factual disputes exist concerning whether Defendant acted either knowingly, with deliberate ignorance, or with reckless disregard for the truth when they submitted requests to FEMA for payment for services performed under FEMA RFQ/contracts.  The Court also finds that while Plaintiff's Response does not sufficiently establish Mr. McCreary as the official voice of FEMA, his attestation is sufficient to raise a genuine issue of material fact as to whether Defendant's noncompliance with the Florida licensing requirements at issue was material to FEMA's decision to pay Defendant under Defendant's FEMA installation contract.

Accordingly, Defendant's Motion for Summary Judgment concerning whether Defendant knowingly submitted any false claims is **DENIED**.

**III.    Conclusion**

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

A.  Defendants' Motion for Summary Judgment (Dkt. 44) is **DENIED**;

B.  Defendant's Motion for Leave to File Verified Amended Complaint (Dkt. 83) is **DENIED** as moot;

**DONE and ORDERED** in Orlando, Florida, this 18th  day of April 2010.


MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record
Any Unrepresented Party